UNITED STATES of America,
Plaintiff-Appellee,

v.

Ernest Noel LEHNING, Peter Basile,
and Glen Devos,
Defendants-Appellants.

Nos. 83–3100, 83–3112 and 83–3113.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1984.

Decided Sept. 7, 1984.

J. Kenneth Lowrie, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Paul Bradley and Mary Mikva, Chicago, Ill., Joseph DiNatale, Oak Park, Ill., for defendants-appellants.

Before PELL and BAUER, Circuit Judges, and JAMESON, Senior District Judge.*

* The Honorable William J. Jameson, Senior Judge of the United States District Court for the District of Montana, is sitting by designation.

BAUER, Circuit Judge.

Following a bench trial, the district court convicted the defendants for conspiring to transport stolen property in interstate commerce in violation of 18 U.S.C. §§ 371 & 2314 (1976). The court sentenced Peter Basile to thirty months imprisonment, and Glen DeVos and Ernest Lehning each to three years imprisonment. This appeal raises two fairly simple questions regarding the sufficiency of the evidence before the trial court on two jurisdictional issues: whether the value of the goods which the defendants conspired to transport exceeded $5,000, and whether the defendants conspired to transport the goods in interstate commerce.

Basile and DeVos drove from Chicago, Illinois, to Merrillville, Indiana, which is approximately one hour from Chicago, on May 28, 1981, to study the Trachtenberg Gallery, a private business, in preparation for the theft of several statues from the Gallery. On June 1, the defendants, all residents of Illinois, returned to Merrillville to steal the statutes. Salvatore Romano, a confidential informant for the government, drove the defendants' automobile. Romano planted a tape recorder in the car. His tape recording for June 1 and his testimony at trial was the principal evidence of the conspiracy at trial.

During the June 1 recorded conversation, Basile stated that the Gallery was near the highway and that the defendants return to Chicago within an hour or so after the theft. DeVos discussed four or five bronze statues he had seen in the Gallery, each with a price tag of between $2,500 and $3,000. DeVos also mentioned that there were two wooden statues in the Gallery each with $3,000 price tags. As Basile, DeVos, and Lehning were breaking into the Gallery, and Romano was waiting in the getaway car, an alarm went off and the four abandoned the theft and returned to Chicago.

At trial, Rose Trachtenberg, the owner of the Gallery, testified that when she arrived at the Gallery on June 2, she noticed that the front door of the store had been tampered with, was slightly ajar, and could not be opened. Nothing was missing from the Gallery. Trachtenberg also testified that her Gallery on June 1 contained original bronze statues with price tags of $1,250, $1,350, $1,500, and $2,900, a mahogany statue with a price tag of $3,300, and several other wooden statues with price tags of at least $2,500. Trachtenberg stated that she set the prices of the items in her Gallery after a conference with the artist. The prices were based on Trachtenberg's twenty years of experience as a buyer and seller of art in all parts of the country. She stated that the prices were based on her opinion of what was fair and competitive in the art business.

The defendants contend that the $5,000 jurisdictional requirement was not met because the government did not prove to the district court which statues the defendants intended to steal from the Gallery. The defendants also contend that Trachtenberg's testimony alone was insufficient to establish the values of the statues in her Gallery, in part because the statues may not actually have sold for those prices.

It is well settled that "a conspiracy to violate [Section 2314] occurs when two or more persons agree to attempt to commit acts which include all the elements of a crime under that section and any overt act is done pursuant to the agreement." *United States v. Rose*, 590 F.2d 232, 235 (7th Cir.1978), *cert denied*, 442 U.S. 939, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979). The trial evidence clearly proved that the defendants agreed to rob the Trachtenberg Gallery and traveled to Merrillville on June 1 for that purpose. The defendants agreed that they would steal "five bronzes." That the defendants may not actually have been able to carry in one trip from the Gallery enough bronze statues to constitute a $5,000 value does not defeat jurisdiction. Commission of the substantive offense is irrelevant. *Id.* at 235.

The only question regarding proof of the jurisdictional amount, therefore, is whether the evidence established a

value for the statues of at least $5,000. Defendants argue that the price tags are irrelevant to the issue of value because they are subjective, the Gallery seldom sold its artworks at the marked prices, and no evidence indicated that the Gallery would receive the marked prices for the statues the defendants intended to steal. The courts have held consistently under both Section 2314 (transporting stolen goods in interstate commerce) and Section 2315 (receiving stolen goods in interstate commerce) that goods may be valued either at the time and place that they are stolen or at any time during their receipt and concealment. *United States v. Moore,* 571 F.2d 154, 156 (3d Cir.), *cert. denied,* 435 U.S. 956, 98 S.Ct. 1589, 55 L.Ed.2d 808 (1978); *United States v. Gardner,* 516 F.2d 334, 349 (7th Cir.), *cert. denied,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975); *United States v. Riso,* 405 F.2d 134, 137 (7th Cir.1968), *cert. denied,* 394 U.S. 959, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969). And although "courts will not permit testimony of the mere subjective value to the individual of the property, the owner's testimony on the objective, market value of the property *is* relevant." *United States v. Robinson,* 698 F.2d 448, 456 (D.C.Cir.1983) (emphasis in original). As the trial court pointed out in its order in this case, "the sales prices [of the statutes] were based on the interaction of the artist and an experienced gallery owner who wished to make sales and was willing to display those prices for that purpose." Memorandum and Order at 2. These prices, arrived at through arms-length negotiations between the dealer and the artist, are competent objective evidence by which the trier of fact could reasonably determine that the prices were the "value" of the statues for purposes of Section 2314.

Proof of a conspiracy to violate Section 2314 also requires proof that the defendants conspired to transport the goods in interstate commerce. The record contains ample evidence supporting the trial court's ruling beyond a reasonable doubt that the defendants intended to transport the statues back to Illinois. Romano's testimony and the recorded conversations on June 1 indicated that the defendants did not intend to sell the statues or otherwise dispose of them that night in Indiana. The defendants came from Illinois that night to "score" and had discussed among themselves how quickly they could return to Illinois with the statues. This evidence alone satisfies the interstate commerce requirement. Additional evidence at trial indicated that the defendants had established quite a burglary ring in Illinois through which they regularly sold the fruits of their labors to two dealers in the Chicago area.

We affirm the convictions of each of the defendants.

AFFIRMED.