# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-17-00803-CR

---

**Michael Joseph Tilghman, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
NO. CR-16-1126, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING**

---

## D I S S E N T I N G   O P I N I O N

While there is an expectation of privacy in a hotel room, it is well settled that the right to privacy is extinguished when a person's right to occupy the room is terminated. *Voelkel v. State*, 717 S.W.2d 314, 315-16 (Tex. Crim. App. 1986) (holding no expectation of privacy during eviction). This can occur when the term of a guest's occupancy of a room expires, i.e. staying beyond the night paid for, as well as by eviction for other reasons. *See infra.* While both parties acknowledge that the hotel had the right to evict Tilghman at the time the police entered the room, the majority ignores this fact. Instead, the lynchpin of their analysis is that Tilghman was not put on notice that he *could* be evicted for illegal activity, namely smoking marihuana, and because of this he was not lawfully evicted from the property when the police entered his room. I disagree. Because Texas law does not require that a hotel guest be notified in advance that he could be evicted for committing illegal activity on hotel property, I dissent. I would affirm the trial court's judgment denying the motion to suppress.

***Stoner* is Distinguishable From This Case**

The majority's analysis relies on *Stoner v. California*, holding that a hotel guest's protection against unreasonable searches and seizures does not depend on the "unfettered discretion" of a hotel employee to grant consent to search. *Stoner v. California*, 376 U.S. 483, 490 (1964). The officers in *Stoner*, however, were not summoned by hotel staff, nor were they asked to evict anyone. Instead, officers approached a hotel clerk investigating a robbery, stating that they "were there to make an arrest of a man who possibly committed an armed robbery." *Id*. at 485. After learning that the suspect was not in the hotel room, officers requested permission to search the suspect's room and searched the room with the permission of the hotel clerk. *Id*. at 485-86.

The officers in this case did not show up unannounced at the Marriott Fairfield Inn to arrest Tilghman for an offense. They were called solely to assist in evicting occupants for smoking marihuana, and the hotel staff did not seek their arrest.[1] The hotel manager testified that he was concerned for his safety and therefore wanted officers present when the eviction occurred. Officers never requested to search the room in connection with a drug investigation, and they saw contraband only when effectuating the eviction. Unlike the officers in *Stoner*, who were attempting to arrest a robbery suspect, the officers in this case were merely performing a routine eviction. The facts of *Stoner* do not support the suppression of evidence in this case.

---

[1] During the suppression hearing the hotel manager testified:

Q. And the purpose of calling law enforcement was . . . it to get anybody in trouble or to effect the arrest of anybody?
A. No, it was just to get them evicted from the room.
Q. So all you wanted was them out?
A. Yes.

**When the Expectation of Privacy is Extinguished in a Hotel**

The Texas Court of Criminal Appeals has acknowledged that the expectation of privacy in a hotel is extinguished upon eviction. *Voelkel*, 717 S.W.2d at 315-16. Further, it is permissible for a police officer to help effectuate that eviction when requested by hotel staff. *Id.* In *Voelkel*, a hotel manager called the police for assistance with an eviction of a guest who stayed two hours beyond her scheduled check-out time and parked a Harley-Davison motorcycle inside of her room.[2] During the eviction, an officer stepped inside the room and saw a large scale, syringes inside an open drawer, and a large pharmaceutical bottle. *Id.* A search of the room yielded illegal contraband. *Id.* In holding the search valid, the Court stated:

> It is initially apparent that appellant had a substantially diminished expectation of privacy . . . by the time Officers Helm and Reed arrived to facilitate her eviction. Beginning on the evening of the 19th, [the manager] had thrice told appellant she had to be gone by 1:00 p.m. on the 20th. Yet at 3:00 p.m. she was still there, evidencing no particular haste to depart.
>
> Under the circumstances, [the manager] clearly had a right to enter the room. Since the officers were present at the invitation of [manager] they also had a right to enter the room. Accordingly, Officer Helm's mere presence in the room did not infringe upon appellant's Fourth Amendment expectation of privacy.

*Id.* (internal citations omitted). Similarly, in *Brimage*, the Court upheld a warrantless search of a suitcase after a guest had not returned several hours after checkout. *Brimage v. State*, 918 S.W.2d 466, 507 (Tex. Crim. App. 1996) (on reh'g). "When the terms of a guest's occupancy of a room expires, the guest loses his exclusive right to privacy in the room." *Id.*

While Texas does not have a case directly addressing the seizure of contraband from occupants being evicted for reasons other than overstaying their term, there are several

---

[2] To her credit, Voelkel moved the motorcycle when requested. *Voelkel v. State*, 717 S.W.2d 314, 315 (Tex. Crim. App. 1986).

post-*Stoner* federal cases discussing this issue. In *Peoples*, an officer notified hotel staff that a hotel occupant was a suspect in an automobile theft. *United States v. Peoples*, 854 F.3d 993, 995 (8th Cir. 2017). In response, the clerk handed the officer a key to the room to evict the occupants pursuant to Missouri's law permitting eviction for those using a hotel for an unlawful purpose. *Id*. After knocking and receiving no response, the officer used the key to open the room and saw contraband in plain view on the floor and nightstand. *Id*. In upholding the lawfulness of the search, the Eighth Circuit held that "the initial entry into the motel room was not a search but an eviction." *Id*. at 997. While the court acknowledged that Fourth Amendment protections can extend to a hotel room, it explained:

> However, "once a guest has been justifiably expelled, the guest is without standing to contest an officer's entry into his hotel room on Fourth Amendment grounds."[] As we explained in *United States v. Rambo*, this is true because, upon eviction, "the rental period . . . terminate[s] . . . [and] control over the hotel room revert[s] to management."

*Id*. at 996 (citing *Young v. Harrison*, 284 F.3d 863, 867 (8th Cir. 2002) (per curiam) and *United States v. Rambo* 789 F.2d 1289, 1295-96 (8th Cir. 1986)).

Similarly, the Seventh Circuit in *Tolbert* held that an officer's unaccompanied entry into a hotel room to evict an occupant for violating a hotel non-smoking and no-party policy was lawful. *United States v. Tolbert*, 613 F. App'x 548, 549 (7th Cir. 2015).

> Once a hotel tenancy has been terminated, the hotel guest loses any privacy right in the room. Evidence at the hearing established that the hotel had rented [the room] subject to the condition that guests who violate its no-party policy are subject to immediate eviction. We cannot conclude that the district court committed clear error in finding that [the manager] exercised the hotel's right when she asked the police to kick out the occupants of [the room]. As soon as she authorized the officers to do so, Tolbert's hotel tenancy—and accompanying expectation of privacy—was extinguished.

4

*Id.* (internal citations omitted).

The officers in this case, like the officers in *Peoples* and *Tolbert*, were evicting occupants at the request of hotel staff. As both parties discussed in oral argument, there is no Texas law requiring hotels to follow any procedure for eviction. Further, our sister court has held no landlord-tenant relationship exists between a hotel and its guest. *Bertuca v. Martinez*, No. 04-04-00926-CV, 2006 Tex. App. LEXIS 1386, at *6 (Tex. App.— San Antonio February 22, 2006, no pet.) (mem. op.).

> [A]n innkeeper has no duty to keep a guest indefinitely and has the right to evict a guest. 'When a guest is obnoxious for some reason, he may be forcibly removed without resort to legal process, provided no more force is used than necessary.'. . . There is no Texas law which, regardless of his conduct or behavior, allows a person to stay in a hotel room merely because the rate for the room has been paid.

*Id.* (internal citations removed). Both parties agree that the hotel had a right to evict Tilghman at the time that the officers entered the room. Appellant's complaint, rather, is that officers had no authority to enter the room to effectuate the eviction. However, as the caselaw cited illustrates, this is not the law in Texas. *See Voelkel*, 717 S.W.2d at 315-16 (recognizing that police officers requested by hotel staff can effectuate eviction). Further, it is not unreasonable for hotel staff to request officers be present, for safety concerns, when guests suspected of illegal activity are asked to leave the property.

While the eviction in this case was not expressly authorized by a statute as in *Peoples*, or a hotel policy provided upon check-in as in *Tolbert*, the cases are more analogous than *Stoner*, which did not involve an eviction. If Texas had a statute that governed evictions for hotel guests, as Missouri does, and did not follow it, then the eviction would have been unlawful, and the evidence resulting from the ensuing search suppressed. However, absent any law

5

requiring that a guest must be put on notice that they could be evicted for illegal activity, I would not require notice here. Tilghman was properly evicted and during that eviction, the officers found contraband in plain view and incident to a lawful arrest. As such, I would affirm the trial court's ruling.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Triana and Kelly

Filed:   June 7, 2019

Publish