18-0707-cr
*United States v. Pizzaro*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3ʳᵈ day of January, two thousand twenty.

PRESENT:   JOSÉ A. CABRANES,
           REENA RAGGI,
                  *Circuit Judges*,
           EDWARD R. KORMAN,
                  *District Judge.*[*]

---

UNITED STATES OF AMERICA,

        *Appellee,*                    18-0707-cr

        v.

RUBEN PIZZARO,

        *Defendant-Appellant,*

NATHANIEL TORRES, AKA NATO,

        *Defendant.*

---

[*] Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

1

**FOR APPELLEE:** SHAWN G. CROWLEY, Max Nicholas, Won S. Shin, Assistant United States Attorneys, *for* Geoffrey S. Berman, United States Attorney, Southern District of New York, New York, NY.

**FOR DEFENDANT-APPELLANT:** JOSEPH MARTINI, Spears Manning & Martini LLC, Southport, CT.

Appeal from an order of the United States District Court for the Southern District of New York (Gregory H. Woods, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court be and hereby is **AFFIRMED**.

Defendant-Appellant Ruben Pizzaro ("Pizzaro") appeals from a judgment of conviction entered on March 6, 2018 in the United States District Court for the Southern District of New York, following a four-day jury trial. Pizzaro was convicted on all three counts in this third superseding indictment (the "Indictment"). Count One charged Pizzaro with conspiring to distribute and possess with intent to distribute cocaine and crack cocaine, in violation of 21 U.S.C. § 846. Count Two charged Pizzaro with murdering David Rivera ("Rivera"), a rival gang member, through the use of a firearm in connection with the narcotics conspiracy charged in Count One, in violation of 18 U.S.C. §§ 924(j) and 2. Count Three charged Pizzaro with using, carrying, possessing, brandishing, and discharging a firearm during and relation to the narcotics conspiracy charged in Count One, on occasions other than Rivera's murder, in violation of 18 U.S.C. §§ 924(c) and 2. Pizzaro was sentenced to 75 years' imprisonment. He is currently serving this sentence. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Pizzaro first challenges the sufficiency of the evidence supporting his conviction on Count Two. Specifically, he asserts that there was insufficient evidence that the firearm used to murder Rivera was used or carried during and in relation to, or possessed in furtherance of, the narcotics conspiracy charged in Count One. He further argues, and for the first time on appeal, that (1) there was insufficient evidence that Rivera's murder was premeditated; and (2) the district court failed to provide a premeditation instruction to the jury. Finally, Pizzaro argues that Count Three of the Indictment is impermissibly duplicitous because it alleges three distinct occasions on which Pizzaro used, carried, or possessed a firearm in furtherance of the narcotics conspiracy, each of which constitutes a separate offense. For the following reasons, we find all of Pizzaro's arguments to be without merit and affirm his conviction on all three counts.

## I.

Pizzaro urges vacatur of his Count Two conviction for insufficient evidence of the requisite narcotics nexus. We review this sufficiency challenge *de novo*, with Pizzaro bearing "a heavy burden, as the standard of review is exceedingly deferential." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (internal quotation marks omitted). "We must view the evidence in the light most favorable to the [G]overnment, crediting every inference that could have been drawn in the [G]overnment's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id.* (internal quotation marks and brackets omitted). "[W]e will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and bracket omitted) (emphasis in original).

Title 18 U.S.C. § 924(j), which establishes the crime charged in Count Two, expressly incorporates by reference Section 924(c). That provision states that "any person who, during and in relation to . . . any drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall" be guilty of a crime. 18 U.S.C. § 924(c)(1)(A). "The phrase 'in relation to' is expansive." *Smith v. United States*, 508 U.S. 223, 237 (1993). Nevertheless, "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id.* at 238. The phrase "in furtherance of" requires that the Government show only "some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). "[T]he ultimate question is whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006) (internal quotation marks omitted).

We conclude that a rational jury could find beyond a reasonable doubt that on November 24, 2015, Pizzaro either carried the firearm in question—a nine-millimeter pistol used to murder Rivera—during and in relation to a qualifying drug trafficking crime, namely the distribution conspiracy charged in Count One, or possessed that firearm in furtherance of such crime, or both. A jury could find that Pizzaro purchased and possessed this specific pistol to protect himself from the rival drug gang, the "Hughes Avenue Crew," with which Pizzaro competed for "turf" and customers in his drug distribution conspiracy. (Trial Transcript ("Tr.") at 158, 205, 211–15, 442). Testimony at trial indicated that Pizzaro had previously purchased another gun to protect the location where his drugs were stored. Moreover, testimony showed that the same gun used to murder Rivera had been used on November 2, 2015—just three weeks before Rivera's murder—to shoot and wound Hughes Avenue crew member Richard Feliz, a drug distribution rival. (Tr. at 212, 295–296, 700–710). The Government submits, and we agree, that there is sufficient evidence for a juror to conclude that Pizzaro carried the nine-millimeter pistol on November 24, 2015, for the same reason he carried it every other day: to protect and further his drug business.

3

Pizzaro's argument that his shooting of Rivera was for personal reasons unrelated to drug trafficking is unavailing. First, this argument, made with respect to *use*, cannot defeat the valid inference a juror could draw as to why Pizzaro *possessed* the gun at all on the day of the murder. Possessing the gun in furtherance of the distribution conspiracy—an element the juror could rationally find for the reasons stated in the preceding paragraph—is independently sufficient for culpability under § 924(c), regardless of use. Moreover, this personal-animosity defense was presented at trial, where the jury was entitled to reject it on the basis of sufficient evidence to find that Pizzaro murdered Rivera at least in part for reasons relating to the underlying distribution conspiracy. Nor can Pizzaro demonstrate insufficiency by maintaining that he had taken a break from drug distribution and was "laying low" during the time of shooting. There was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that, despite this hiatus, Pizzaro continued to possess the nine-millimeter firearm because it "afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *Snow*, 462 F.3d at 62. Indeed, there is also sufficient evidence for a rational jury to conclude that, despite this hiatus, Pizzaro used this firearm to eliminate Rivera, a known competitor to Pizzaro's drug trafficking operation, in relation to the underlying offense.

## II.

Pizzaro next argues that premeditation is an essential element of his Section 924(j) murder conviction, and that there was insufficient evidence for the jury to determine beyond a reasonable doubt that Rivera's murder was premeditated. Pizzaro also argues that the District Court erred in failing to provide the jury a premeditation instruction.[1] Because Pizzaro did not raise either of those arguments below, both are subject to plain error review.

To establish plain error, the defendant must demonstrate that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the

---

[1] The Indictment did not expressly charge Pizzaro with either first- or second-degree murder. Instead, it charged him with "causing the death of a person through the use of a firearm which killing is murder as defined in Title 18 United States Code, Section 1111(a)." A. 32–33. Section 924(j) incorporates by reference Section 1111(a), which provides that "murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by . . . willful, deliberate, malicious, and premeditated murder . . . is murder in the first degree. Any other murder is murder in the second degree." 18 U.S.C. § 1111(a). At oral argument, Pizzaro's counsel conceded that second-degree murder would support a § 924(j) conviction. Nevertheless, he maintained that because the District Court's jury charge referenced premeditation, the prosecution was required to prove that *mens rea*. The issue of whether premeditation is an element of a Section 924(j) offense was argued before the Second Circuit on May 2, 2018 in *United States v. Capers*, 17-1836. That panel has not yet issued a decision. We need not ourselves pursue this point because, for reasons stated in text, we conclude that the evidence of premeditation was overwhelming.

4

appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks omitted). Because we conclude that the record contains overwhelming evidence that Pizzaro acted with premeditation, his arguments fail plain error review, and we affirm his conviction.

The following facts overwhelmingly establish premeditation. Pizzaro had been involved in a drug war with Rivera that involved multiple back-and-forth shootings over the years. (Tr. 158, 315). Moments before the murder, which was captured on videotape, Pizzaro first noticed Rivera at a distance of "a block or two." (Tr. 230). Pizzaro then crouched behind a car before removing and cocking his gun (Tr. 230). Pizzaro's associate then urged him to "leave it alone," to which Pizzaro responded, "no, he [Rivera] came and shot at us on the block." (Tr. 230). Pizzaro then chased after Rivera. (Tr. 230–31). A witness to the murder testified that, while chasing Rivera, Pizzaro shouted to him, "oh, you remember?" (Tr. 114). Pizzaro then shot Rivera several times. (Tr. 109; GX 303 (video)). Moreover, when Rivera, who had fallen to the ground, attempted to stand back up, Pizzaro punched him back to the ground and then shot him again in the chest (Tr. 383–89). This evidence can admit no other conclusion but that Pizzaro willfully, deliberately, maliciously, and premeditatedly killed Rivera.

### III.

Finally, Pizzaro argues that Count Three was impermissibly duplicitous,[2] creating a possibility that the jury was not unanimous as to its guilty verdict, thus affecting his substantial rights. He therefore requests a new trial on this count. While the Government argues that Pizzaro waived his duplicity challenge by failing to raise it before trial, *see, e.g., United States v. Viserto*, 596 F.2d 531, 538 (2d Cir. 1979) ("Since the alleged duplicitous character of the counts appears on the face of the indictment, appellants could have moved before trial to dismiss the indictment. Fed. R. Crim. P. 12(b)(2). Failure to make the appropriate motion is a waiver."), waiver may not apply because Pizzaro claims that he was convicted for conduct for which the jury may not have reached a unanimous verdict, *see United States v. Sturdivant*, 244 F.3d 71, 77 (2d Cir. 2001) (stating that a sentence imposed in that circumstance constitutes "plain error reviewable on appeal even absent timely objection").

---

[2] "An indictment is impermissibly duplicitous where: (1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and (2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (*citing United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980) (internal quotations omitted).

We need not pursue the waiver challenge because Pizzaro's argument fails plain error review. First, the asserted error is not plain. A count is not duplicitous where "it includes . . . multiple ways of committing a single offense." *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016); *see Richardson v. United States*, 526 U.S. 813, 817 (1999) (holding that a jury need not "decide unanimously which of several possible sets of underlying brute facts make up a particular element[; that is,] which of several possible means the defendant used to commit an element of [a] crime"). To the extent Pizzaro's claim is that the jury may not have been unanimous as to what gun he used, we recently noted in a non-precedential summary order that "courts . . . have uniformly held that the jury need not be unanimous as to a specific gun that a defendant possessed, used, or carried in violating § 924(c)." *United States v. Johnson*, 659 F. App'x 674, 679 (2d Cir. 2016) (citing Tenth, Fourth, Third, First, Eleventh, and Fifth Circuits); *see United States v. Lofton*, 275 F. App'x 30, 33 (2d Cir. 2008) (non-precedential summary order) ("[W]e have never required that a jury make a unanimous finding as to the gun used to support a § 924(c) conviction, particularly where the indictment did not charge that specific guns were used."). To the extent the claim is that the jury may not have been unanimous as to the occasion when he used a gun, Pizzaro points to no case clearly holding that such unanimity is required.

But even were unanimity required, this Court has "time and again[] held that a general charge regarding unanimity is ordinarily sufficient to protect the defendant's right to a unanimous verdict." *United States v. Trupin*, 117 F.3d 678, 687 (2d Cir. 1997). The District Court in Pizzaro's trial gave a general unanimity instruction. A. 48, 105, 108. Judge Woods *also* instructed the jury to make two special findings with respect to whether Pizzaro discharged or brandished the firearm. The instructions stated that "the jury must be unanimous as to whether the firearm was brandished and/or discharged." A. 89. Implicit in such an instruction is unanimity as to the occasion of brandishment or discharge. Because the District Court gave both a general unanimity instruction and a limited special verdict instruction, Pizzaro's arguments fail plain error review.

## CONCLUSION

We have reviewed all of the arguments raised by Pizzaro on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the March 6, 2018 judgment of conviction in its entirety.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6